UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DIGONEX TECHNOLOGIES, INC., | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     *vs*. | ) | 1:12-cv-00380-JMS-DKL |
| | ) | |
| QCUE, INC., | ) | |
|     *Defendant*. | ) | |

## ORDER

Presently pending before the Court in this patent infringement dispute is Defendant Qcue, Inc.'s ("Qcue") Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. [Dkt. 35.] Qcue argues that it is not subject to personal jurisdiction in Indiana and that venue is improper here. For the following reasons, the Court determines that it is appropriate to transfer this action to the Western District of Texas, where another, broader lawsuit between these parties is already pending. Accordingly, it will not address the merits of Qcue's arguments that Plaintiff Digonex Technologies, Inc.'s ("Digonex") claims against it should be dismissed.

### I.
### BACKGROUND

Qcue is a Texas company with its principal place of business in Austin, Texas. [Dkt. 36-1 at 2, ¶ 3.] Qcue "develops software-based dynamic pricing products and services that enable sports teams, entertainment venues, promoters, and ticketing organizations to set optimal upfront prices, and adjust those prices based on shifting demand, changes in market conditions, and other real-time sales data." [*Id.* at 2, ¶ 4.]

Digonex is an Indiana company with its headquarters and sole office in Indianapolis. [Dkt. 45 at 18.] Digonex has sued Qcue in this District, alleging that Qcue has infringed upon two patents – the '424 Patent entitled "Dynamic Pricing of Items Based on Sales Criteria," and

the '303 Patent entitled "Digital Online Exchange for Pricing Items to Exhaust Inventory by an Expiration Time." [Dkt. 1 at 2.] Specifically, Digonex alleges that Qcue attempted to sell its infringing dynamic pricing software products to at least one professional sports team based in Indiana, [dkt. 1 at 1-2], which Digonex later identifies in its brief in opposition to Qcue's Motion To Dismiss as the Indiana Pacers, [dkt. 45 at 1]. Digonex also alleges that Qcue "ma[de] multiple contacts with representatives of Purdue University and [the University of] Notre Dame…." [*Id.* at 1.]

Shortly after Digonex initiated this lawsuit, Qcue sued Digonex in the Western District of Texas in *Qcue, Inc. v. Digonex Technologies, Inc.*, No. 1:12-cv-00484-SS (the "Texas Litigation"). In the Texas Litigation, Qcue seeks a declaration that it has not infringed upon the '424 or '303 Patents or that they are invalid. [Texas Litigation, dkt. 3 at 8-10.] Qcue also sues Digonex for copyright infringement, alleging that Digonex has infringed upon its copyrighted works, which include certain material on its website and in its promotional materials. [*Id.* at 4.]

In the Texas Litigation, Qcue and Digonex filed a Stipulated Motion For Stay of Deadline to Respond to Amended Complaint, advising the court there of Qcue's pending Motion to Dismiss here and stating that this Court's decision "may have a significant impact [on] the scope of this action, including whether Qcue's declaratory judgment claims relating to the '424 Patent and '303 Patent will be a part of this action." [Texas Litigation, dkt. 8 at 2.] The court there stayed the Texas Litigation pending our decision on Qcue's Motion to Dismiss. [Texas Litigation, dkt. 9.]

With the exception of this ruling, this Court has not yet issued any substantive orders.

## II.
### DISCUSSION

Qcue asks this Court to dismiss this action for lack of personal jurisdiction and improper venue. Specifically, Qcue argues that it is not subject to personal jurisdiction in Indiana because it has not had adequate minimum contacts with Indiana to warrant exercise of either specific or general jurisdiction since: (1) it did not sell or offer for sale the '424 or '303 Patents in Indiana since its discussions with organizations in Indiana were "preliminary," [dkt. 36 at 6-8]; and (2) it does not have "continuous and systematic business contacts" with Indiana – it has no offices, employees, agents, representatives, corporate presence, realty or bank accounts in Indiana; it is not registered with the Indiana Secretary of State or qualified to do business in Indiana; it does not maintain an address or telephone number in Indiana; it does not pay Indiana taxes nor has it ever applied for or received any Indiana business licenses; it has never entered into a contract in Indiana with a person or entity based in Indiana; and it has never sold its dynamic pricing software products or related services to any person or entity in Indiana, [*id.* at 9]. Qcue argues that litigating the case in Indiana would be fundamentally unfair because its assets and most of its representatives, agents, and employees who are likely to be witnesses are located in Texas. [*Id.* at 11.] Finally, Qcue argues that venue is improper here under 28 U.S.C. § 1391(b) because it does not "reside" in Indiana, the events giving rise to the claim did not occur in Indiana, and it does not do business in Indiana. [*Id.* at 12.]

Digonex responds that Qcue has sufficient contacts with Indiana because it "purposefully directed its activities at Indiana" by engaging in "multiple and protracted communications" with potential customers here. [Dkt. 45 at 10.] Digonex points to evidence uncovered during sixty days of jurisdictional discovery which the parties jointly requested and stipulated to, [dkt. 41], and which the Court granted, [dkt. 42], arguing that Qcue made offers for sale and demonstrated

its products in Indiana, [dkt. 45 at 16]. Digonex asserts that any burden on Qcue from litigating here is small, given "its protracted relationships with the Pacers and other potential customers in Indiana," and the fact that Qcue's sole salesperson resides in California so could travel to Indiana as easily as he could travel to Texas. [*Id.* at 17-18.] Additionally, Digonex claims that Indiana has a strong interest in resolving the dispute because Digonex's patent rights were allegedly violated here, Digonex is headquartered here, and many of the witnesses and much of the evidence are located here. [*Id.* at 18.] Digonex notes the existence of the Texas Litigation, and states that "Qcue apparently expects Digonex to undergo a mirror-image burden to the burden Qcue is complaining about here [by litigating its case in Texas]." [Dkt. 45 at 18, n.3.] Finally, Digonex argues that venue in a patent infringement case is governed by 28 U.S.C. § 1400(b), and that, because Qcue is subject to personal jurisdiction here, venue is proper here as well. [*Id.* at 19.]

### A. Applicable Law

An action for patent infringement may be brought "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

The Court typically considers four factors in deciding whether to transfer an action: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the situs of material events and access to proof; and (4) the interest of justice. *No Baloney Mktg., LLC v. Ryan*, 2010 U.S. Dist. LEXIS 30296, *26-35 (S.D. Ind. 2010). Federal district court have the inherent power to administer their dockets so as to conserve scarce judicial resources. *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995).

Although the Federal Circuit supervises the Court in this action, it will apply the law of the Seventh Circuit regarding transfers of venue. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222-23 (Fed. Cir. 2011) ("In reviewing a district court's ruling on a motion to transfer pursuant to § 1404(a), we apply the law of the regional circuit…." (citation omitted)). And in the Seventh Circuit, "[t]he interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (*citing Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986)).[1] Given its potentially dispositive nature, the Court will begin with a discussion of the interest of justice, before considering the relative convenience of the parties and the witnesses of the two venues.

### B. Interest of Justice

As a separate element of the transfer analysis, the interest of justice considers "the efficient administration of the court system." *Research Automation, Inc.*, 626 F.3d at 978 (citation omitted). Typically, courts evaluating this element "look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Id.* (citation omitted).

---

[1] Applying the law of the Fifth Circuit, the Federal Circuit called dicta *Coffey*'s "strong statement" about the independent considerations of judicial economy. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345 (Fed. Cir. 2010). To the extent that *Research Automation*'s reaffirmation of *Coffey*'s dicta might also be characterized as dicta – a question not considered in *In re Vistaprint* – the Court notes that the Seventh Circuit has cautioned lower courts to avoid "treat[ing] lightly" dicta "until disavowed," *Hendricks County Rural Electric Membership Corp. v. NLRB*, 627 F.2d 766, 768 n.1 (7th Cir. 1980). Given the Seventh Circuit's strong concerns about judicial economy, *see, e.g., Neal v. Honeywell Inc.*, 191 F.3d 827, 830 (7th Cir. 1999) (reviving, for reasons of judicial economy, an ultimately meritorious argument made below but not raised on appeal because "[s]ometimes the judiciary must act in self-defense"), the Seventh Circuit does not appear likely to disavow *Coffey* / *Research Automation* anytime soon. This Court will act accordingly.

The speed-to-trial factor heavily favors transfer to the Western District of Texas. According to the most recent figures from the Administrative Office of the United States Courts, civil actions in the Western District of Texas had to wait 16.8 months from filing to trial, while the median in this District was 31 months.[2] The Texas Litigation already includes requests for declarations regarding Qcue's alleged infringement on the '424 and '303 Patents, making consolidation with this action for pretrial purposes likely.[3]

As for each District's relative familiarity with governing law, that consideration is essentially neutral where, as here, federal law governs. *See, e.g., Coffey*, 796 F.2d at 221 ("In a diversity action it is also considered advantageous to have federal judges try a case who are familiar with the applicable state law." (citation omitted)).

The third consideration, "the respective desirability of resolving controversies in each locale," *Research Automation*, 626 F.3d at 978, strongly favors transfer. Judicial economy is advanced by transferring this matter so the Western District of Texas can consolidate this matter with the Texas Litigation and consider the '424 and '303 Patents in the same litigation as Qcue's copyright infringement claims. A transfer and consolidation would enable discovery to be better coordinated between Digonex and Qcue, and would enable the magistrate judge there to explore a global settlement between the parties. Those results would not be possible here, because Qcue's copyright infringement claims are not part of this lawsuit. To the extent that *Markman*

---

[2] http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2011/appendices/C05Sep11.pdf (last accessed August 27, 2012).

[3] Digonex suggests that it would face undue burden by being forced to litigate the Texas Litigation there, [dkt. 45 at 18 n.3], and stated in the Stipulated Motion for Stay of Deadline to Respond to Amended Complaint that "Digonex does not waive any objection to personal jurisdiction or venue in this Court and expressly reserves the right to challenge personal jurisdiction and/or venue when Digonex responds to Qcue's Amended Complaint in this action." [Texas Litigation, dkt. 8 at 2.] However, Digonex has not formally raised any personal jurisdiction or venue issues in the Texas Litigation to date.

rulings will be necessary, a transfer and consolidation would provide economies because only one judge would have to construe the Patents.  A transfer would also eliminate the possibility of inconsistent judgments regarding the validity of the '424 and '303 Patents and any infringement issues.  And transfer might enable the district judge in Texas to manage the Texas Litigation and this litigation so as to permit a consolidated appeal, furthering judicial economy at the appellate level, too.

Finally, regarding the relationship that the community of each venue has to the controversy, it is neutral.  Indiana has an interest in ensuring that corporations headquartered here receive the protections afforded them under patent law, but also that entities are provided software-based dynamic pricing products and services at the cost called for by open and fair competition.  Texas, home to Qcue, has an interest in ensuring that corporations headquartered there receive the protections they are entitled to under copyright law, but also that its corporations comport with applicable laws.

Given the likelihood that this action will be resolved significantly sooner in the Western District of Texas, the desirability of having both this case and the Texas Litigation pending in the same district in order to promote judicial efficiency and foreclose the possibility of inconsistent judgments, and the neutrality of the remaining considerations, the Court finds that the interest of justice strongly supports a transfer to the Western District of Texas.

### C. Convenience of the Parties and Witnesses

The second branch of the transfer analysis considers the "convenience of parties and witnesses."  28 U.S.C. § 1404(a).  Factors relevant to this "convenience" inquiry include: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of

litigating in the respective forums." *CMG Worldwide, Inc. v. Bradford Licensing Assocs.*, 2006 U.S. Dist. LEXIS 98674, *10-11 (S.D. Ind. 2006) (citation omitted).

Digonex's choice of forum, Indiana, is given less deference when the operative facts have little or no connection with the chosen forum. *See MPH Techs. Oy v. Zyxel Communs. Corp.*, 2010 U.S. Dist. LEXIS 72893, * 5 (N.D. Ill. 2010) ("[W]here the plaintiff's choice of forum has a relatively weak connection with the operative facts giving rise to the claim, the deference traditionally given to that selection is lessened"). Here, the only connection with Indiana that Digonex makes is that Qcue allegedly approached entities to buy its allegedly infringing products here. But the sale of infringing products in a district, without more, does not establish a substantial connection to the chosen forum. *Id.* at *6. The operative facts here have a weak connection to Indiana and, for that reason, the Court gives little deference to the fact that Digonex chose to sue here.[4]

The situs-of-material-events factor weighs slightly in favor of transferring this case. While Digonex argues that Qcue offered infringing products for sale in Indiana, it has not alleged that Qcue researched, designed, developed, or manufactured the allegedly infringing products in Indiana – all key inquiries for the venue analysis in a patent infringement case. *See, e.g., Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 331 (E.D. N.Y. 2006) ("The locus of operative facts in patent infringement cases usually lies where the allegedly infringing product was designed, developed, and produced"); *Skill-Craft Enterprises, Inc. v. Astro Mfg., Inc.*, 1990 U.S. Dist. LEXIS 18929, *13 (N.D. Ind. 1990) (situs-of-material-events factor neutral where de-

---

[4] The Court acknowledges that Digonex filed this lawsuit before Qcue initiated the Texas Litigation. The Seventh Circuit Court of Appeals has instructed that the order of filing is part of the transfer analysis, but "should weigh no more heavily in the district court's analysis than the plaintiff's choice of forum." *Research Automation, Inc.*, 626 F.3d at 982. Accordingly, the Court gives this factor little or no weight given the weak connection, discussed above, between this forum and the operative facts.

velopment and production of allegedly infringing product took place in one forum and sale of allegedly infringing products took place in another). Qcue presumably researched, designed, developed, and manufactured the allegedly infringing products in Texas but, in any event, those activities did not occur in Indiana.

The third factor, ease of access to sources of proof, is neutral. Qcue's documents are primarily in Texas, [dkt. 36 at 11], and Digonex's are primarily in Indiana, [dkt. 45 at 18]. This factor is a wash, and may even weigh in favor of transfer since Qcue is the accused infringer so its documents will likely be more relevant. *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("'In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.'" (citation omitted)).

As for the convenience of witnesses, this factor is also a wash. Qcue claims that "nearly all" of its employees who are likely to be witnesses are located in Texas, [dkt. 36 at 11], although two employees reside in California, [dkt. 36-1 at 3]. Digonex states that "many of [its] witnesses" are located here in Indiana. [Dkt. 45 at 18.] Litigating here will force Qcue's witnesses to travel, and litigating in Texas will force Digonex's witnesses to travel.

The final factor – convenience to the parties – is also neutral. Qcue's argument that it is inconvenient to litigate here is equally applicable to Digonex having to litigate in Texas.[5]

In summary, the Court gives little deference to Digonex's choice of forum due to its weak connection with the operative facts, and considerations of convenience to the witnesses and the parties, as well as the other convenience factors, are neutral. While transfers should not ordinari-

---

[5] As required for transfer under 28 U.S.C. § 1404(a), the Court also finds that this matter could have originally been brought in the Western District of Texas since that court clearly has personal jurisdiction over Qcue, which is a Texas corporation with its regular place of business in that district, [dkt. 36-1 at 2].

ly "merely shift[] inconvenience from one party to another," *Research Automation*, 626 F.3d at 978, a transfer to the Western District of Texas will allow for a full and much speedier resolution of all matters disputed in both cases, and foreclose the possibility of inconsistent judgments related to the '424 and '303 Patents. The Court finds that the "interest of justice" factors weigh heavily in favor of transferring this matter to the Western District of Texas.[6]

### III.
### CONCLUSION

Transferring this action to Texas would strongly promote the interest of justice. Under the circumstances, transfer is "clearly" proper, *Coffey*, 796 F.2d at 220 (citation omitted). The Court will, therefore, **DENY AS MOOT** Qcue's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, [dkt. 35]. Because the Court has not considered Qcue's substantive arguments regarding whether this Court has personal jurisdiction over Qcue or whether venue here is proper in the first instance, the Court **DENIES AS MOOT** Digonex's Motion For Leave To File Surreply, [dkt. 51], since the Surreply exclusively discusses those issues. The Court also **DENIES AS MOOT** Digonex's Unopposed Motion For Oral Argument, [dkt. 47]. The Clerk is directed to **TRANSFER** this action to the Western District of Texas. Any previously ordered dates and deadlines are **VACATED** and any pending motions not addressed above are **TERMINATED**.

08/30/2012

                                                                                            Hon. Jane Magnus-Stinson, Judge
                                                                                            United States District Court
                                                                                            Southern District of Indiana

---

[6] Because the Court is transferring this matter, it has not considered whether it has personal jurisdiction over Qcue or whether venue in this Court is substantively proper.

**Distribution via ECF only:**

Holiday W. Banta
ICE MILLER LLP
h.banta@icemiller.com

Ben L. Bernell
BRACEWELL & GIULLIANA, LLP
ben.bernell@bgllp.com

R. Trevor Carter
FAEGRE BAKER DANIELS LLP - Indianapolis
trevor.carter@faegrebd.com

Edward A. Cavazos
BRACEWELL & GIULLIANI, LLP
ed.cavazos@bgllp.com

Conor M. Civins
BRACEWELL & GIULLIANI, LLP
conor.civins@bgllp.com

Jeffrey V. Lasker
FENWICK & WEST, LLP
jlasker@fenwick.com

Andrew M. McCoy
FAEGRE BAKER DANIELS LLP - Indianapolis
andrew.mccoy@faegrebd.com

Michael J. Sacksteder
FENWICK & WEST, LLP
msacksteder@fenwick.com

David D. Schumann
FENWICK & WEST, LLP
dschumann@fenwick.com

Jeffrey Ware
FENWICK & WEST, LLP
jware@fenwick.com