UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DIGONEX TECHNOLOGIES, INC., | ) | |
|  *Plaintiff*, | ) | |
| | ) | |
|  *vs*. | ) | 1:12-cv-00380-JMS-DKL |
| | ) | |
| QCUE, INC., | ) | |
|  *Defendant*. | ) | |

## ORDER

Presently pending before the Court in this patent infringement dispute is Plaintiff Digonex Technologies, Inc.'s ("Digonex") Motion for Reconsideration of the Court's Transfer Order (Dkt. 54). [Dkt. 57.] For the following reasons, while the Court has reconsidered its decision to transfer this case to the Western District of Texas to the extent that it has factored in the arguments set forth by Digonex in support of its motion, it declines to alter its previous decision.

### I.
### BACKGROUND

The Court incorporates its statements regarding the background of this case as set forth in its August 30, 2012 Order transferring this case to the Western District of Texas ("Transfer Order"), [dkt. 54], but briefly re-caps the nature and history of the case.

Qcue, Inc. ("Qcue") is a Texas company which "develops software-based dynamic pricing products and services that enable sports teams, entertainment venues, promoters, and ticketing organizations to set optimal upfront prices, and adjust those prices based on shifting demand, changes in market conditions, and other real-time sales data." [Dkt. 36-1 at 2, ¶¶ 3-4.] Digonex is an Indiana company which has sued Qcue in this District, alleging that Qcue has infringed upon two patents by attempting to sell its allegedly infringing dynamic pricing software products to at least one professional sports team based in Indiana, and has "ma[de] multiple contacts with

- 1 -

representatives of Purdue University and [the University of] Notre Dame" regarding its software. [Dkts. 1 at 1-2; 45 at 1.]

Shortly after Digonex initiated this lawsuit, Qcue sued Digonex in the Western District of Texas in *Qcue, Inc. v. Digonex Technologies, Inc.*, No. 1:12-cv-00484-SS (the "Texas Litigation"). In the Texas Litigation, Qcue seeks a declaration that it has not infringed upon the two patents at issue here, and also sues Digonex for copyright infringement related to the inclusion of certain material on Digonex's website and in its promotional materials. [Texas Litigation, dkt. 3 at 4, 8-10.]

On May 15, 2012, Qcue moved to dismiss this lawsuit for lack of personal jurisdiction and improper venue, [dkt. 35], arguing that it is not subject to personal jurisdiction in Indiana because it has not had adequate minimum contacts with Indiana to warrant exercise of either specific or general jurisdiction. [Dkt. 36 at 6-11.] Digonex responded that Qcue has significant contacts with Indiana because it "purposefully directed its activities at Indiana" by engaging in "multiple and protracted communications" with potential customers here. [Dkt. 45 at 10.]

On August 30, 2012, the Court issued the Transfer Order, finding, among other things, that the interest of justice factor of the transfer analysis weighed heavily in favor of transfer because the median time from filing to trial in the Western District of Texas is almost half of the median time in this District (16.8 months there, versus 31 months here). [Dkt. 54 at 6.] The Court also found that judicial economy would be advanced by transferring this matter because the Texas Litigation contains copyright infringement claims that are not part of this lawsuit, and the Texas court could consolidate the two cases (thus avoiding inconsistent judgments on the patent claims), the parties could coordinate discovery, and the magistrate judge there could explore a global settlement – all results which would not be possible here. [*Id.* at 6-7.] The Court also

found that Digonex's choice of forum should be given less deference because the operative facts have little or no connection with the chosen forum, noting that the situs of material events in the patent infringement context is generally where the research, design, development, and manufacture of the allegedly infringing product took place, which would likely be Texas and would not be Indiana. [*Id.* at 8-9.] Digonex now asks the Court to reconsider its Transfer Order, retain the case in this District, and consider Qcue's Motion to Dismiss on the merits.

## II.
### STANDARD OF REVIEW

A district court has the inherent power to reconsider interlocutory orders, as justice requires, before entry of final judgment. *Spencer County Redevelopment Comm'n v. AK Steel Corp.*, 2011 U.S. Dist. LEXIS 7985, *3 (S.D. Ind. 2011); *see* Fed. R. Civ. Pro. 54(b) (providing that any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties…may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). A motion to reconsider is appropriate where the Court has misunderstood a party, where the Court has made a decision outside the adversarial issues presented to the Court by the parties, where the Court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). A party seeking reconsideration cannot introduce new evidence that could have been discovered before the original motion or rehash previously rejected arguments. *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269 (7th Cir. 1996).

## III.
### DISCUSSION

In support of its Motion for Reconsideration, Digonex argues that the Court transferred the case *sua sponte* without considering any argument from the parties, [dkt. 58 at 1], that the transfer was inappropriate because its choice of forum should be given great weight, [*id.* at 3-5], and that the Court was not aware of certain facts which make the Texas Litigation a non-factor in the transfer analysis, [*id.* at 5-9]. Qcue responds that Digonex did not point to manifest errors of law or newly discovered evidence in support of its Motion for Reconsideration, [dkt. 61 at 2-3], that Digonex's choice of forum should not be given great weight because the activity that is the basis for this lawsuit has little connection to Indiana, [*id.* at 3], that the Texas Litigation is not a mirror image of this one, [*id.* at 3-4] and, in any event, that this Court does not have personal jurisdiction over it, [*id.* at 7-8].

Federal district courts have the inherent power to administer their dockets so as to conserve scarce judicial resources. *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995). Digonex does not argue that the Court applied an incorrect legal standard in determining that transfer under 28 U.S.C. § 1404(a) was appropriate, but only that the Court did not consider argument from the parties, and should have given greater weight to some factors (*e.g.*, its choice of forum) and less weight to others (*e.g.*, the pending Texas Litigation). Significantly, the Court notes that many of the same factors it considered in deciding that transfer is appropriate are also factors that the parties discussed in connection with their personal jurisdiction analysis – particularly the parties' discussion of Qcue's contacts with Indiana. [*See, e.g.*, dkts. 36 at 6-12; 45 at 3-16.] Indeed, the Court considered the parties' discussion of those factors in determining that transfer was appropriate. Nevertheless, to address Digonex's concerns about the lack of opportunity to argue concerning transfer, the Court has considered the arguments made in

connection with the Motion for Reconsideration on the merits, but finds that they do not change its conclusion that transfer is appropriate.

Specifically, as to the weight given to Digonex's choice of forum, Digonex ignores the fact that Qcue's research, design, development, and manufacture of the allegedly infringing products – all important factors in the venue analysis for a patent case – do not appear to have any connection to Indiana. *See, e.g.*, *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 331 (E.D. N.Y. 2006). Digonex has not presented any information that either it had not presented in connection with its personal jurisdiction arguments, or that the Court did not already consider in connection with the Transfer Order, and the Court stands by its earlier decision that Digonex's choice of Indiana as its forum should be given little weight.[1]

Additionally, the Court is not persuaded by Digonex's argument that "two highly material facts" related to the Texas Litigation that the Court was unaware of should change its conclusion that transfer is appropriate. [Dkt. 58 at 5-7.] The first "fact" Digonex sets forth is that "Qcue agreed to dismiss its declaratory judgment patent claims in Texas if this Court decided it has jurisdiction over Qcue," which Digonex argues should alleviate the Court's concern regarding the possibility of inconsistent decisions on the patents. [*Id.* at 6.] The Court will not base its decision on what *might* happen in the Texas Litigation. Currently, Qcue's request for a declaratory judgment relating to the two patents is still a part of the Texas Litigation, and Digonex has now answered those claims. [Texas Litigation at dkt. 21.] Indeed, the Texas Court has already appointed a Special Master to conduct "any and all proceedings, and procedural rulings, neces-

---

[1] Digonex's one potentially new argument, made in its reply brief, is that "[t]ransfer to Texas may bar Digonex from presenting testimony from witnesses with knowledge of such facts at trial," [dkt. 62 at 3]. This vague argument is not persuasive, as Digonex does not identify who these witnesses are and why it would be unable to present their testimony in Texas, either live or by video, or by deposition.

sary to the *Markman* process…." [*Id.* at dkt. 23.]² Based on the current facts, and as the patent claims in the Texas Litigation march forward, there is a very real risk of inconsistent rulings relating to the patents.

The second "fact" Digonex asks the Court to consider is "the nature of Qcue's copyright claims." [Dkt. 58 at 6.] Specifically, Digonex discusses its view of the merits of those claims, [*id.* at 6-9], and concludes that they are a "sham," [*id.* at 8]. It would be improper for the Court to consider the merits of Qcue's copyright claims – claims which are not a part of this lawsuit and which, in any event, are at the initial pleading stage – and the Court declines to do so here. The fact remains that those claims exist and Qcue is pursuing them as part of the Texas Litigation, and not as part of this litigation.

The existence of the Texas Litigation makes the appropriateness of transfer clear, because of the fact that it is broader than this litigation and will present the opportunity to conserve judicial resources and promote efficiency. However, the Court's Transfer Order is appropriate even in the absence of the Texas Litigation. Given the weak connection this forum has to the operative facts of the case, and the fact that the majority of the other factors were neutral (*e.g.*, the relationship each venue has to the controversy, the ease of access to sources of proof, and the convenience of the witnesses and parties) and no factors weighed heavily against transfer, the strong interest of justice promoted by transfer is enough alone to tip the scale toward transfer. Specifically, the efficient administration of the court system weighs heavily in favor of transfer to Texas, where there is a strong likelihood that the parties will see resolution of this case significantly

---

² The Texas Court has consolidated this action with the Texas Litigation, "contingent upon the District Court of the Southern District of Indiana's ruling on a pending motion to reconsider transferring the former case here…." [Texas Litigation at dkt. 23.]

sooner than they would in this District. Digonex does not address the speed-to-trial factor in its Motion for Reconsideration.[3]

In sum, while the Court has considered Digonex's arguments made in connection with its Motion for Reconsideration, it declines to change its conclusion that transfer is appropriate. Accordingly, it also declines to consider Qcue's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue on the merits.

### IV.
#### CONCLUSION

For the foregoing reasons, the Court **DENIES** Digonex's Motion for Reconsideration of the Court's Transfer Order (Dkt. 54), [dkt. 57], to the extent that, while it has considered Digonex's arguments, it declines to alter its August 30, 2012 Order transferring this matter to the Western District of Texas, [dkt. 54].

11/19/2012

                                          Hon. Jane Magnus-Stinson, Judge
                                          United States District Court
                                          Southern District of Indiana

---

[3] Digonex also argues that Qcue's request in the Texas Litigation for a declaratory judgment regarding the patents should have been brought as a compulsory counterclaim here, [dkt. 62 at 3]. This argument does not weigh against transfer where, as here, transfer is appropriate even independent of the Texas Litigation.

**Distribution via ECF only:**

Holiday W. Banta
ICE MILLER LLP
h.banta@icemiller.com

Ben L. Bernell
BRACEWELL & GIULLIANA, LLP
ben.bernell@bgllp.com

R. Trevor Carter
FAEGRE BAKER DANIELS LLP - Indianapolis
trevor.carter@faegrebd.com

Edward A. Cavazos
BRACEWELL & GIULLIANI, LLP
ed.cavazos@bgllp.com

Conor M. Civins
BRACEWELL & GIULLIANI, LLP
conor.civins@bgllp.com

Jeffrey V. Lasker
FENWICK & WEST, LLP
jlasker@fenwick.com

Andrew M. McCoy
FAEGRE BAKER DANIELS LLP - Indianapolis
andrew.mccoy@faegrebd.com

Michael J. Sacksteder
FENWICK & WEST, LLP
msacksteder@fenwick.com

David D. Schumann
FENWICK & WEST, LLP
dschumann@fenwick.com

Jeffrey Ware
FENWICK & WEST, LLP
jware@fenwick.com